Filed 6/20/16  P. v. Moles CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C080259 |
| Plaintiff and Respondent, | (Super. Ct. No. P13CRF0699) |
| v. | |
| HENRY PASCHAL MOLES, | |
| Defendant and Appellant. | |

On May 14, 2014, defendant Henry Paschal Moles pleaded no contest to unlawful driving or taking of Lawrence Weitzman's Ford truck (Veh. Code, § 10851, subd. (a)—count 2),[1] receiving stolen property (Pen. Code, § 496, subd. (a)—count 3),[2] and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)—count 4). He also admitted one prior strike conviction.

---

[1]  Codefendant Crystal Diamond Carrell was separately charged in counts one and five.

[2]  Undesignated statutory references are to the Penal Code.

1

Defendant appeals from the trial court's victim restitution award and denial of his petition for resentencing under Proposition 47 with respect to count 3. We conclude the trial court abused its discretion by ordering victim restitution for losses that did not arise out of the criminal conduct for which defendant was convicted, and therefore remand for further proceedings consistent with this opinion. Because defendant failed to meet his burden to show he was eligible for resentencing under Proposition 47, we affirm the denial of this petition.

## I. BACKGROUND

On May 14, 2014, before defendant entered his plea, the prosecution stated the factual bases for the plea as follows:

"As to [count 2], on or about the 27th day of December 2013 in El Dorado County, the Defendant, Henry Moles, took a vehicle unlawfully without the owner's permission with the intent to permanently or temporarily deprive him of possession of that vehicle being a Ford. The vehicle was a Ford pickup truck.

". . . [O]n or about the 27th day of December 2013 in the County of El Dorado, [defendant] committed the crime of receiving stolen property, [he] did unlawfully receive and withhold personal property belonging to other individuals specifically mail and vehicle keys which had been obtained—to have been stolen and obtained knowing the property did not belong to [him] and it was stolen.

"As to [count four], on or about the 27th day of December of 2013 in the County of El Dorado, [defendant] committed the crime of possession of a controlled substance, namely methamphetamine, in that [he] willfully and unlawfully possessed the controlled substance."

The trial court also described the allegations in count three as they appeared in the complaint. The stolen items were "set forth as mail, personal property, and vehicle keys."

Defendant pleaded no contest to all three counts.

2

After defendant entered his plea, the trial court sentenced him to five years and four months in prison:  The low term of 16 months on count two and one-third the midterm of eight months on counts three and four, all doubled by the prior strike conviction.  The court ordered victim restitution in an amount to be determined.

On January 2, 2015, defendant filed his petition for resentencing pursuant to Proposition 47, requesting the reduction of his convictions for counts three and four to misdemeanor offenses.  On July 31, 2015, the trial court held an evidentiary hearing to determine the amount of victim restitution and decide the Proposition 47 petition.  At the hearing, Weitzman testified regarding the burglary of his house on December 24, 2013, and his request for $82,000 in restitution.  The exact breakdown of the restitution request is unclear from the record, but the total was largely attributable to stolen and/or damaged vehicles:  a Jeep Grand Cherokee, a Harley-Davidson motorcycle, a Kawasaki motorcycle, a Ducati motorcycle and the Ford Truck.  With respect to the Ford truck, Weitzman provided a $549.03 receipt for repairs and testified his insurance covered the cost of other damages minus his $500 deductible.  With respect to the Ducati motorcycle, Weitzman testified that a special ignition key was stolen and the ignition system was tampered with, rendering the key useless.  Replacing the ignition system would cost $1,200.

Unlike the other vehicles, Weitzman did not own the Jeep.  It had been loaned to him by Chrysler.  Weitzman explained he was an automobile and motorcycle journalist, but because of this theft, he no longer received vehicles to review or the free gasoline that comes with them.  He estimated he had already lost $5,000 in free gasoline.  He also explained that, as the result of the burglary and his filing a claim with his insurance company, the insurance deductible on his homeowner's policy increased by $3,600.  Additionally, Weitzman requested restitution for personal items that were stolen, such as crash helmets, air compressors, a tool box and a motorcycle jacket.

3

Weitzman clarified all of the stolen and damaged items were taken from one of his garages, except for a jacket, keys and some smaller items that were taken from his house. When the Ford truck was recovered, an officer from the El Dorado County Sheriff's Office returned other property belonging to Weitzman, including his house keys and keys to the Ducati motorcycle, the Harley-Davidson motorcycle and the Ford truck.

At the conclusion of the restitution hearing, the court ordered the requested $82,000 in restitution to Weitzman: "[A]lthough Mr. Moles was not charged with a burglary, the preponderance of the evidence shows that all of these items were there together, Mr. Moles is in possession of the Ford truck, there's the keys, now we have the information on the keys today, the Ducati, the keys to the Harley-Davidson[,] the keys to his house, all of these items—he testified there was a crash helmet with the Ford truck. All of these items it's been shown by a preponderance of the evidence that they were all there together. And I'm not making any kind of finding nor do I need to make a finding that Mr. Moles acted on his own and committed a burglary, I don't have to make that finding. But it is of note to this Court that all of these items [were] with the vehicle, [Vehicle Code section ]10851 vehicle that was taken. He is charged with, pled to, and is responsible for personal property and vehicle keys which ties (*sic*) all of these matters together for this—purposes of this restitution order." The only specific components of the award the court identified were the Kawasaki motorcycle and the Jeep Grand Cherokee.

With respect to the petition for resentencing, the court reclassified count four as a misdemeanor, but denied the petition with respect to count three because the value of the stolen property was greater than $950. The court resentenced defendant to the same total prison term of five years and four months: The midterm of two years on count two and one-third the midterm of eight months on count three, both doubled by the prior strike conviction. The new sentence for count three was run concurrently.

4

## II. DISCUSSION

### A. *Restitution*

"[W]e review the trial court's restitution order for abuse of discretion. [Citations.] The abuse of discretion standard is 'deferential,' but it 'is not empty.' [Citation.] '[I]t asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].' [Citation.] Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the surviving victim's economic loss. To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*People v. Giordano* (2007) 42 Cal.4th 644, 663-664, fn. omitted.)

The California Constitution expresses "the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A).) Section 1202.4 implements this right. That statute expresses the Legislature's intent "that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (§ 1202.4, subd. (a)(1).) Except in circumstances not relevant here, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) Accordingly, courts have held that "[w]hen judgment is imposed and the defendant sentenced to a period of incarceration (in prison or jail), the court may order restitution only for losses arising out of the 'criminal conduct

for which the defendant has been convicted.' " (*People v. Walker* (2014) 231 Cal.App.4th 1270, 1274.) This stands in contrast to the standard that applies when the defendant is placed on probation. In those circumstances, "As long as the restitution imposed is ' "reasonably related to the crime of which the defendant was convicted or to future criminality," ' it may be imposed as a condition of probation—'even when the loss was not necessarily caused by the criminal conduct underlying the conviction.' " (*Ibid*.)

The first question presented by this appeal is whether the trial court abused its discretion by ordering restitution for losses that did not arise out of the criminal conduct for which defendant was convicted. We conclude that it did.

California courts have adopted the "substantial factor" test for analyzing causation in these circumstances. (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396.) "Under that standard, a cause in fact is something that is a substantial factor in bringing about the injury." (*Ibid*.) " ' "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." [Citation.] Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation]. This rule honors the principle of comparative fault.' [Citation.]" (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321-1322.)

*People v. Holmberg, supra*, relied upon by the People, is instructive. In it, the defendant, who had been convicted of concealing stolen property, asserted a restitution award based on loss of use of the property was improper because those damages were due to the burglary and would have occurred regardless of his conduct. (*Id*. at pp. 1313, 1318.) In rejecting his claim, the court of appeal noted there was evidence defendant received the property on the day it was stolen, and held that his concealing of the property was a concurrent cause of the victims' losses and a substantial factor in causing their damages. (*Id*. at pp. 1323-1324.) The court also said, "the prosecutor sought victim

restitution in this case based only on defendant's concealing of stolen property, and not the burglary or theft of the property. The prosecutor did not seek restitution for computers that were damaged in the Stonecrest burglary but not removed from the premises, for the repair of those computers, for the stolen cash (since there was no evidence defendant ever possessed it), or for the miscellaneous items that were never identified by the victim." (*Id*. at p. 1324.) In other words, a conviction for receipt of stolen property without a corresponding theft or burglary conviction can support a restitution award for damages related to *that property*, but it cannot support a restitution award for damages related to *other property* the thieves stole or attempted to steal that never reached the defendant.

Here, we do not doubt that defendant's taking and driving of the Ford truck and holding of the stolen property he was found in receipt of was a concurrent cause of Weitzman's losses and a substantial factor in causing damage to that property. But the prosecution also sought victim restitution for damages related to items there was no evidence defendant ever possessed. For instance, the largest component of the restitution award was the theft of a Jeep Grand Cherokee, and there was no evidence or allegation defendant ever took, drove or received this vehicle. On this record, defendant's taking of the Ford truck or receipt of other keys and personal property did not play more than a negligible or theoretical part in bringing about the loss of the Jeep Grand Cherokee and Weitzman's corresponding loss of free gasoline. It does not matter that the Ford and the stolen property defendant possessed were in the same area if there is no evidence that the conduct supporting defendant's conviction played any part in their disappearance. To conclude otherwise would require us to infer defendant committed crimes for which he was never charged, i.e., the taking of other vehicles or the receipt of additional stolen

7

property.[3]  This we cannot do.  (See *People v. Holmberg, supra,* 195 Cal.App.4th at p. 1325 [striking restitution award for Ethernet cables where prosecution argued recovery of other stolen computer-related equipment from defendant's home made it reasonable to believe the thief also brought the cables to defendant's home]; cf. *People v. Lai* (2006) 138 Cal.App.4th 1227, 1249 [precluding restitution for loss attributable to welfare aid fraudulently obtained before the charged period].)  Thus, the trial court abused its discretion by ordering restitution for losses that did not arise out of the criminal conduct for which defendant was convicted.[4]

We remand for further proceedings consistent with this opinion.  It is unclear from the record what items comprised the court's $82,000 award and whether Weitzman claimed damages or received a restitution award for any items defendant at one time possessed, other than the Ford truck and the Ducati motorcycle key.

B.      *Proposition 47*

Proposition 47 created section 1170.18, which provides that any defendant "currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under [Proposition 47] had [it] been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing " under the statutory framework as amended by the passage of Proposition 47.  (§ 1170.18, subd. (a).)  The offenses that Proposition 47 reduced to misdemeanors

---

[3]  This appears to be what the People ask of us when they assert the trial court did not abuse its discretion because "there was reason to conclude that part of the basis for the possession of stolen property conviction was property that was stolen from the victim's home but never recovered."

[4]  Because we reach this conclusion, we need not reach defendant's additional argument that the trial court's restitution order violated his right to due process because it was based on a crime he did not commit.

include receiving stolen property where the value of the property does not exceed $950. (§§ 496, 1170.18, subd. (a).)

At his resentencing hearing, defendant relied on a sheriff's property and evidence report to contend the value of the stolen items was no more than $805. The court sustained the prosecution's hearsay and lack of foundation objections to the document. The court noted that while three of the items had a combined listed value of $805, the rest had no value assigned to them: "I mean, there's a yellow gold or yellow metal ring, and you know, various other items, a wireless card, if you ever buy one of those, that's got a value. So I don't find that to be very persuasive as to an amount." On the other hand, the court found that, although it was not necessary for the prosecution to do so, the prosecution had established beyond a reasonable doubt that the value of the stolen property was more than $950.

On appeal, defendant contends the trial court's conclusion that the value of the stolen property was greater than $950 was not supported by substantial evidence. Of course, this claim assumes it was the prosecution's burden to establish the value of the property. Defendant suggests we ignore case law establishing it was his burden because the leading case, *People v. Sherow* (2015) 239 Cal.App.4th 875 (*Sherow*), cited a secondary source in reaching its conclusion (*id*. at p. 879), and that secondary source has been updated to refer to *Sherow* and other cases that follow its reasoning. (Couzens & Bigelow, *Proposition 47 "The Safe Neighborhoods and Schools Act"* (Feb. 2016, updated May 2016), <http://www.courts.ca.gov/documents/Prop-47-Information.pdf> [as of June 16, 2016] pp. 42-43.) The fact these authorities agree and rely on each other does not compel the conclusion that they have all reached the wrong conclusion. Indeed, they have not.

"The *Sherow* court noted the well-settled principle that ' " '[a] party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense he is asserting.' " ' [Citation.]" (*People v. Rivas-Colon* (2015)

9

241 Cal.App.4th 444, 449.) This principle is embodied in Evidence Code section 500. Defendant contends we should apply Evidence Code sections 501 and 520—which provide that the party claiming a defendant is guilty of a crime has the burden of proof—instead. But as the court in *Sherow* explained, "the resentencing provisions of Proposition 47 deal with persons who have *already* been proved guilty of their offenses beyond a reasonable doubt." (*Sherow, supra*, 239 Cal.App.4th at p. 880, italics added.) The question presented by defendant's resentencing petition was not whether to increase the punishment for his offense, but whether he was eligible for a potential reduction of his sentence. (*People v. Rivas-Colon, supra,* at p. 451.) Therefore, it is Evidence Code 500 that applies. We agree with *Sherow* and its progeny, and conclude defendant failed to carry his burden to establish the value of the stolen property did not exceed $950. The trial court correctly determined defendant's section 496 conviction was not eligible for resentencing.

## III.  DISPOSITION

The restitution order is reversed and this case is remanded for further proceedings consistent with this opinion.  The order denying defendant's petition for resentencing is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

HOCH, J.