Filed 6/10/24  P. v. Torgrude CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081407 |
| v. | (Super.Ct.No. FVI20002429) |
| JASON TORGRUDE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Stephanie Tanada, Judge.  Affirmed.

Stephanie A. Lickel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, and Collette C. Cavalier, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant Jason Torgrude pled no contest to operating a chop shop (Veh. Code, § 10801, count 1) and receiving stolen property, a 2015 Polaris Razor (Razor) (Pen. Code, § 496d, count 2). Pursuant to the plea agreement, the court granted defendant 24 months of felony probation. The court later ordered defendant to pay $9,836.72 in victim restitution.

On appeal, defendant contends the court erred in its award of any amount of victim restitution. We affirm.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On March 26, 2020, an informant provided a police officer information about stolen property located at defendant's residence. The officer spoke to defendant at the residence, who consented to a search of the property. The officer located "a newer Polaris Razor which had been dismantled." He conducted a registration check of the vehicle, which reflected that it had been reported stolen on January 19, 2019. The vehicle report for the Razor reflected that the registered owner was a J. Brown. The legal owner was reflected as Capital One. In all, the search of defendant's property revealed a total of four stolen vehicles and other stolen property.

On August 19, 2020, the People charged defendant by felony complaint with operating a chop shop (Veh. Code, § 10801, count 1), four counts of receiving stolen

---

[1] Defendant filed a petition for writ of habeas corpus (*In re Torgrude*, case No. E082847), which we ordered to be considered with this appeal. We shall resolve the petition by separate order.

[2] Defendant stipulated that the complaint and police reports would provide the factual basis for his plea.

property (Pen. Code, § 496d, counts 2-5), and two counts of receiving stolen property not exceeding $950 in value (Pen. Code, § 496, subd. (a), counts 6 & 7).

On March 22, 2022, pursuant to a plea agreement, defendant pled no contest to operating a chop shop (Veh. Code, § 10801, count 1) and receiving stolen property (Pen. Code, § 496d, count 2). In return, the court dismissed the remaining counts and granted defendant 24 months of formal probation.

On April 27, 2022, the probation department (Probation) filed a restitution memorandum, which reflected there were four victims in the instant matter: E. Konold, C. Ramirez, R. Robinson, and J. Brown. Probation contacted the victim restitution specialist who provided supporting documentation for restitution for Brown: "the victim provided documentation releasing all rights and ownership of the vehicle involved in the incident to D. Malone. On that date, documentation was provided from D. Malone, with the vehicle property damage breakdown which including the following[:] $8,883.72 parts for repair, and $953.00 for towing and storage fees, a total amount of $9,836.72."

Attached to the memorandum was a release dated September 18, 2016, by Brown of all interest and responsibility for the Razor to Malone, in return for which Malone would make all remaining payments on the vehicle. Malone, in turn, provided a letter to the victim advocate reflecting, "Some correspondence with your office is addressed to . . . Brown. At the time of purchase I was in a relationship with . . . Brown, [which] subsequently dissolved. Attached find copies of a notarized release of interest in the

3

[Razor] made by . . . Brown dated Sept. 18, 2016. . . . Brown suffered no losses with the theft and recovery, and paid no part of the recovery, storage nor towing."

Malone also completed an accounting of his damages on the People's property loss form, to which he attached a detailed list of all the parts required for fixing the vehicle and their prices; he also attached receipts for towing and storage of the vehicle. Malone executed the property loss form under penalty of perjury.

The June 15, 2022, minute order reflects that the court had read and considered Probation's memorandum on victim restitution. The court set the matter for a formal restitution hearing. The August 22, 2022, minute order reflects that defendant was challenging restitution; the court continued the matter.

After several additional continuances, the People filed a brief in support of restitution with further documentary evidence. The People attached six photographs of the vehicle reflecting its state of dismantlement and an itemized online shopping cart of each part required to repair the vehicle.

Also attached was a letter from Malone reflecting that "200-300 hours of labor would be required to restore [the Razor] to running condition . . . ." "As the pictures show, we had to disassemble the machine to the frame to remove the truck bed coating used to disguise it, and also inspect mechanical components to repair or replace as the rebuild progressed."

"The common Shop rate for this area is $90-140 per hour, making labor cost for outside work to be $18,000 if accomplished in 200 hours at []lower labor rates, and as

high as $42,000 at 300 hours and $140 an hour." "The only reason repairs have been affected is the skill set of the owner[']s family combined with the desire to use a machine we have been paying for that we could not use."

On May 17, 2023, the court held the restitution hearing. The court stated, "I've reviewed all . . . the documents provided by the People including the property loss form filled out by . . . the victim and signed under penalty of perjury on October 4, 2020; therefore, the evidence is at least minimally authenticated with regard to the parts for repair, and the recovery, towing, and storage fees. Therefore, it is the intent of the Court to order restitution—to make a finding the People have met their prima facie burden and the burden is shifted to the defendant."

Defense counsel countered, "I believe that the person who submitted the claim is not the victim in the case. My understanding is that the designated victim in the case may have signed off a release of liability . . . to the person who's making the claim. This is not an assignment for purposes of the law that the purpose can—[*sic*] who's making the claim at this time is the victim. So I'd be objecting on the ground that it is not the victim in this case who, basically, is making the claim for restitution."

Defense counsel additionally objected to the competency of the list of parts in support of the requested amount of restitution: "It doesn't have an address of the location. It doesn't have additional information." "It is not signed by any person who basically collected that information to basically authenticate it as competent evidence."

5

"I don't believe there is competent and authenticated evidence regarding the value of the repairs."

The court responded, "I'm a little confused now. I thought this was just a hearing to determine whether the People had . . . shown a prima facie case to proceed to a formal hearing. [¶] Are we setting a formal hearing later or is this the formal hearing?" The parties agreed this was the formal hearing.

The court replied, "All right. In that case, the defense's objections are noted for the record. [¶] As for the assignment of rights, while I do follow that argument, unfortunately, I don't have any evidence of that before me so I can't consider it. [¶] As for the authentication of the—of the parts, I understand defense's objection but, again, that was already authenticated by the victim or purported victim in 2020."[3] The court awarded victim restitution in the amount of $9,836.72.

## II. DISCUSSION

Defendant contends the court erred in its award of any victim restitution. First, defendant argues the court erred in overruling defendant's objection to the "lack" of evidence that Brown had transferred her rights to the Razor to Malone. Defendant

---

[3] The parties diverge on the meaning of the court's statement, "As for the assignment of rights, while I do follow that argument, unfortunately, I don't have any evidence of that before me so I can't consider it." Defendant contends the court's statement meant that the People "had not produced any competent or credible evidence of assignment." The People argue the court meant "it did not have any evidence negating the restitution claim from Malone." We note the court previously observed that it had read and considered Probation's memorandum on victim restitution. At the hearing, it stated it, "reviewed all . . . the documents provided by the People . . . ."

maintains the People did not sustain their burden of proof that the purported assignment of interest made Malone a direct victim.

Second, defendant contends the court relied on improper evidence in determining the amount of restitution. Specifically, defendant avers that Malone's declaration failed to satisfy the requirements of Code of Civil Procedure section 2015.5 because it did not reflect that it had been executed in California or under the laws of California.[4] Thus, defendant maintains the evidence of damages was inadmissible as a matter of law.

    1.  General Law.

"'[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court.' Restitution 'shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . .' [Citation.] 'The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible.' [Citation.]" (*People v. Pittman* (2024) 99 Cal.App.5th 1252, 1258 (*Pittman*).)

The court "'"must use a rational method that could reasonably be said to make the victim whole."' [Citation.]" (*People v. Valle* (2023) 93 Cal.App.5th 1329, 1332 (*Valle*).) There "'"'is no requirement the restitution order be limited to the exact amount of the

_____

[4] Malone indicated on one document that his address was in Arizona.

7

loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action . . . .' [Citation.]" [Citation.]'" (*People v. Marrero* (2021) 60 Cal.App.5th 896, 906.)

"The victim must make a prima facie showing of the loss." (*Pittman*, *supra*, 99 Cal.App.5th at p. 1258.) "[A] trial court may find a victim estimate is sufficient to make a prima facie showing of loss, subject to rebuttal by the defendant." (*Id.* at p. 1260.) For instance, "a trial court may accept, as prima facie evidence, a victim's estimate in a probation report, thus shifting to the defendant the burden to show the requested amount exceeds the cost of replacement or repair." (*Id.* at p. 1259; *id*. at pp. 1259-1260, 1262 ["'bare statement'" of damages contained in probation officer's report sufficient to uphold restitution award]; accord *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 (*Keichler*); accord *People v. Foster* (1993) 14 Cal.App.4th 939, 943-947 (*Foster*), superseded by statute on other grounds.)

"[T]here is no basis to impose—at the prima facie stage—a categorical rule that victim estimates of loss are insufficient, particularly since such estimates may in some cases be the only information reasonably obtainable to support a restitution request." (*Pittman*, *supra*, 99 Cal.App.5th at p. 1261.) "'The standard of proof at a restitution hearing is preponderance of the evidence, not reasonable doubt.' [Citation.]" (*People v. Baudoin* (2022) 85 Cal.App.5th 1184, 1188 (*Baudoin*).)

"'Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the

8

amount of losses claimed by the victim. [Citation.] The defendant has the burden of rebutting the victim's statement of losses, and to do so, may submit evidence to prove the amount claimed exceeds the repair or replacement cost of damaged or stolen property.' [Citation.]" (*Pittman*, *supra*, 99 Cal.App.5th at p. 1258.)

"We review a trial court's restitution order for abuse of discretion. [Citation.] We ask '"whether the ruling in question 'falls outside the bounds of reason' under the applicable law and relevant facts [citations]."' [Citation.] '"""When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found.'" [Citations.]"' [Citation.]" (*Valle*, *supra*, 93 Cal.App.5th 1329, 1332.) "In reviewing restitution orders, we do not reweigh the evidence or make credibility decisions. Our review is to determine whether there is sufficient evidence to support the inferences made by the trial court. [Citations.]" (*Baudoin*, *supra*, 85 Cal.App.5th at p. 1191.)

2. Victim

Defendant argues the court erred in overruling defendant's objection to the evidence that Brown had transferred her rights to the Razor to Malone. Defendant maintains the People did not sustain their burden of proof that the purported assignment of interest made Malone a direct victim. We disagree.

"'[T]he term "victim" has a broad and flexible meaning.' [Citation.]" (*People v. Montiel* (2019) 35 Cal.App.5th 312, 319.) "Generally, of course, '[a] victim is the *object* of a crime. [Citation.] '"Actual"' or '"direct"' victims are "the real and immediate

9

objects" of the offense. [Citation.] Thus, people or entities are entitled to restitution when the crime was committed against them.' [Citation.]" (*Id*. at p. 320.)

"[A] court may impose restitution for all victims of a single incident . . . for which the defendant is convicted and sentenced to prison, whether or not those victims are named in the charging document." (*People v. Walker* (2014) 231 Cal.App.4th 1270, 1276; see *Crump v. Appellate Division of Superior Court* (2019) 37 Cal.App.5th 222, 245 ["'Whether [this] potential victim[] [was] specifically named in the charging document is irrelevant.'"].)

Here, although the police report reflected that the registered owner of the Razor was Brown, she "provided documentation releasing all rights and ownership of the vehicle involved in the incident to . . . Malone." Attached to the memorandum and supporting Probation's statement therein, was a release dated September 18, 2016, by Brown of all interest and responsibility for the Razor to Malone, in return for which Malone would make all remaining payments on the vehicle.

Malone, in turn, provided a letter reflecting, "Some correspondence with your office is addressed to . . . Brown. At the time of purchase I was in a relationship with . . . Brown, [which] subsequently dissolved. Attached find copies of a notarized release of interest in the [Razor] made by . . . Brown dated Sept. 18, 2016. . . . Brown suffered no losses with the theft and recovery, and paid no part of the recovery, storage nor towing." Malone additionally averred that the only reason he was repairing the vehicle

was that, *as an owner who had been making payments on the vehicle*, he wanted to be able to eventually use it.

The release predated the theft of the Razor by nearly two and a half years. The release, supported by Brown and Malone's attestations to Probation and the victim advocate, constituted sufficient evidence that Malone was the direct victim of defendant's offense. Therefore, the court acted within its discretion in determining that Malone was entitled to restitution.

3. Amount of Restitution

Defendant contends the court relied on improper evidence in determining the amount of restitution. Specifically, defendant avers that Malone's declaration failed to satisfy the requirements of Code of Civil Procedure section 2015.5, because it did not reflect that it had been executed in California or under the laws of California. Thus, defendant maintains the evidence of damages was inadmissible as a matter of law. We disagree.

"[A] trial court may accept, as prima facie evidence, a victim's estimate in a probation report, thus shifting to the defendant the burden . . . ." (*Pittman*, *supra*, 99 Cal.App.5th at p. 1259; *id*. at pp. 1259-1260, 1262 ["'bare statement'" of damages contained in probation officer's report sufficient to uphold restitution award]; see *Keichler*, *supra*, 129 Cal.App.4th at p. 1048; *Foster*, *supra*, 14 Cal.App.4th at pp. 943-947.)

Here, Probation filed a restitution memorandum, which reflected that Malone had provided documentation of a total amount of $9,836.72 in damages. Malone's estimate of damages provided to Probation, in and of itself, was sufficient evidence to shift the burden to defendant; a burden that defendant did not attempt to meet. Thus, the court acted within its discretion in its victim restitution award.

However, Malone also completed an accounting of his damages on the People's property loss form, to which he attached a detailed list of all the parts and their prices, which were required to fix the Razor; he additionally attached receipts for the towing and storage of the vehicle. Malone executed the property loss form under penalty of perjury.

Moreover, attached to the People's brief in support of Probation's recommended amount of restitution were six photographs of the vehicle reflecting its state of dismantlement and an itemized online shopping cart of each part required to repair the vehicle.

Furthermore, Malone submitted a letter reflecting the number of hours of labor and the going hourly rates for such labor required to fix the Razor. The amounts varied between a low of $18,000 and a high of $42,000. The evidence submitted by Probation, the People, the victim restitution advocate, and Malone was more than sufficient to establish Malone's damages. Thus, the award of $9,836.72 as victim restitution was well within the court's discretion.

As the People note, by failing to raise the issue below, defendant forfeited any contention regarding whether Malone's report of damages was legally inadequate due to

12

his failure to strictly comply with Code of Civil Procedure section 2015.5. (*People v. Thompson* (2022) 83 Cal.App.5th 69, 90 ["'[D]efendant's failure to make a timely and specific objection on the ground[s] he now raises forfeits the claim on appeal.' [Citation.]".)

Regardless, defendant's contention fails because no such declaration is required. Defendant cites no case holding otherwise. The fact that Malone at least attempted to comply with Code of Civil Procedure section 2015.5, even if failing in some aspect, accords his statements even more weight than if there had been no attempt to do so. In other words, if Malone simply gave an estimate of his damages to Probation, even without an attempt to execute a document under penalty of perjury, that estimate itself would constitute sufficient evidence to shift the burden to defendant.[5]

Defendant exposits *People v. Vournazos* (1988) 198 Cal.App.3d 948 for the proposition that a trial court, in awarding victim restitution, cannot rely solely on a probation officer's report of a victim's statement of loss. (*Id*. at pp. 958-959.) Defendant contends the issue here is one of the *admissibility* of such evidence, a legal issue reviewed de novo, instead of an issue of the *weight* of the evidence, which would be reviewed for abuse of discretion or sufficiency of the evidence. He notes that there is a split of authority on the issue which the California Supreme Court has never resolved. (*In re Travis J.* (2013) 222 Cal.App.4th 187, 204 ["The replacement or repair cost of the

---

[5] Thus, defendant's contention that his counsel below was constitutionally ineffective for failing to object on this basis fails because defendant can neither demonstrate error nor prejudice. (*People v. Rices* (2017) 4 Cal.5th 49, 80.)

13

victim's property cannot be established simply by statements made by the victim to the defendant's probation officer."]; *People v. Harvest* (2000) 84 Cal.App.4th 641, 653 ["[M]ention of the [restitution] claim in the probation officer's report, . . . may satisfy notice requirements for due process [citation], but . . . cannot take the place of evidence."].)  However, none of these cases require that a victim provide a declaration in compliance with Code of Civil Procedure section 2015.5.

Moreover, here, the court did not rely solely on the probation officer's report of the victim's stated damages.  Rather, as discussed *ante*, the court also relied on Malone's accounting of his damages on the People's property loss form, a detailed list of all the parts and their prices, receipts for towing and storing of the vehicle, photographs of the vehicle reflecting its state of dismantlement, an itemized online shopping cart of each part required to repair the vehicle, and Malone's letter reflecting the amount and value of labor required to fix the Razor.

Regardless, we choose to follow the better reasoned and longstanding precedent of our own district and division on the issue of whether statements reported by probation are alone sufficient to shift the burden to a defendant at victim restitution hearings.  We reject the decisions holding otherwise, which have long since been repeatedly disapproved of, both expressly and impliedly.  (*Foster*, *supra*, 14 Cal.App.4th at pp. 943-947; *In re S.S.* (1995) 37 Cal.App.4th 543, 546-547; *People v. Cain* (2000) 82 Cal.App.4th 81, 87-88 [Court properly relied on hearsay evidence contained in probation officer's report in awarding victim restitution]; *Keichler*, *supra*, 129 Cal.App.4th at p.1048 [impliedly

14

disagreeing with *Harvest*]; *People v. Prosser* (2007) 157 Cal.App.4th 682*, 692 (*Prosser*)

[It is not "improper for a court to base a stolen property valuation on the uncorroborated

statement of the property owner."]; *People v. Gemelli* (2008) 161 Cal.App.4th 1539,

1542-1543; *Pittman*, *supra*, 99 Cal.App.5th at pp. 1259-1261.)[6]

### III.  DISPOSITION

The court's restitution award is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

We concur:

RAPHAEL

J.

MENETREZ

J.

---

[6] To the extent defendant raises federal or state due process challenges to the restitution award, defendant forfeited them by failing to raise them first in his opening brief.  "'We will not ordinarily consider issues raised for the first time in a reply brief.'" (*Golden Door Properties*, *LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 559 ["'Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue.'"].) "[D]efendant's due process rights are limited at a restitution hearing [citation] and trial courts have discretion regarding the formalities they follow and the evidence they consider at such hearings . . . ." (*People v. Millard* (2009) 175 Cal.App.4th 7, 42; see *Prosser*, *supra*, 157 Cal.App.4th at p. 692 ["'The scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited:  "'A defendant's due process rights are protected when [he or she has] notice of the amount of restitution claimed . . . , and . . . has an opportunity to challenge the figures . . . at the . . . hearing.'" [Citations.]'  [Citation.]"].)