[No. C066330. Third Dist. Apr. 30, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD JEAN SNOW, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1110 and 8.1105(b), this opinion is certified for publication with the exception of part I. of the Discussion.

---

---

## COUNSEL

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

---

## OPINION

**MURRAY, J.**—Defendant Ronald Jean Snow pled no contest to false imprisonment (Pen. Code, §§ 236, 237, subd. (a))[1] pursuant to a plea agreement. Thereafter, he was placed on probation. After a restitution hearing, defendant was ordered to pay victim restitution totaling $44,994.85, plus interest, for missed work, medical bills, and increased security costs incurred by the victim as a result of defendant's conduct.

On appeal, defendant contends the amount of the restitution order is not supported by substantial evidence. Defendant further contends the trial court violated the *Harvey* rule[2] by ordering him to pay restitution to the victim for a dental bill, the cause of which was an uncharged assault defendant perpetrated on the victim.

In the unpublished portion of this opinion, we conclude that the trial court did not abuse its discretion by awarding the victim restitution for loss of work

---

[1] Undesignated statutory references are to the Penal Code.

[2] *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396] (*Harvey*).

and medical bills associated with an injury to her left eye sustained as a result of defendant's actions in a count that was dismissed as part of his plea bargain.

In the published portion of this opinion, we conclude that imposing restitution for the victim's dental bill did not violate the *Harvey* rule and the restitution order was a valid condition of probation that is both reasonably related to the offense to which defendant pled and effectively serves the purpose of deterring future criminality.

Accordingly, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant and the victim, Sandra Cunningham, lived together from January 2005 to January 2007. During that time, there were several incidents of domestic violence resulting in injury, including multiple head injuries and injuries to her left and right eyes.

In January 2005, defendant struck the victim in the head and face with his fist, injuring her left eye. According to the victim, the eye was "pushed out" of the socket as a result of the force and it caused a "blister." Outpatient surgery was later required.

In November 2005, defendant and the victim were traveling on Interstate 5 to Southern California in a car driven by the victim when defendant struck the victim in the jaw several times with his fist. As a result of the assault, a crown came off one of the victim's teeth. A dentist later replaced the crown. This incident occurred a few hours south of Yolo County.

In October 2006, the victim was driving defendant home the day after he had surgery. Defendant was not happy with the victim's driving, so he grabbed the steering wheel, moved the car to the curb, and pushed the victim out of the car. Defendant drove off and the victim walked home. Once she was home, defendant yelled at the victim and hit her in the head with his open hands. As the victim tried to protect herself, defendant punched her in the face, scratching the cornea of her right eye and causing it to "pop[] out" of the socket. Initially, defendant refused to take the victim to the hospital. He later agreed but told the victim he would kill her if she told anyone what happened. Scared, the victim told the doctor she accidentally had been hit in the eye with a bungee cord.

---

[3] Our recitation of the events involving defendant and the victim is based primarily on testimony given at the preliminary hearing held on August 25 and 26, 2008.

On January 22, 2007, defendant threw the victim into a chair, choked her with his hands, banged her head into the chair while holding her neck, and struck her. He then threw the victim to the floor and continued to choke her. During this episode, defendant repeatedly threatened to kill the victim.

On February 3, 2009, pursuant to a negotiated agreement, defendant pled no contest to false imprisonment (count five of the information), charged as having occurred during the January 22, 2007 incident. In exchange, a number of charges and allegations were dismissed.[4] Under the agreement, defendant was to be granted probation, not sentenced to state prison at the outset, and serve a cap of 120 days in the county jail. As we will discuss in more detail, defendant entered a *Harvey* waiver for restitution purposes as to the dismissed counts.

On April 17, 2009, defendant was placed on formal probation for three years. Conditions of probation were imposed at that time; however, restitution was to be determined after a formal hearing, which was not held until August 16, 2010. On September 7, 2010, the court ordered defendant to pay $44,994.85 restitution to the victim as a condition of probation.

## DISCUSSION

### I. Restitution for the Eye Injury[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. Restitution for Replacement of Dental Crown

Defendant contends the trial court erred in ordering him to pay restitution to the victim for a dental crown he knocked out of her mouth during an uncharged assault occurring in November 2005. Defendant does not deny he caused the injury and resulting dental expense. He contends that restitution is barred by the *Harvey* rule. We disagree.

 ■ In *Harvey*, pursuant to a plea agreement, the defendant pled guilty to two counts of robbery with the use of a firearm and a third count of robbery was dismissed. (*Harvey, supra,* 25 Cal.3d at p. 757.) In sentencing the

---

[4] The following charges and allegations were dismissed: two counts of corporal injury on a cohabitant (§ 273.5, subd. (a)) and allegations of great bodily injury under domestic violence circumstances (§ 12022.7, subd. (e)); dissuading a witness (§ 136.1, subd. (c)(1)); two counts of criminal threats (§ 422), one of which included an allegation that defendant personally used a deadly weapon (§ 12022, subd. (b)(1)); assault by force likely to produce great bodily injury (§ 245, subd. (a)(1)); and battery against a cohabitant (§ 243, subd. (e)(1)).

 `See footnote, *ante*, page 932.

defendant to the upper term, the trial court relied upon the dismissed robbery count as an aggravating factor. Our high court held that this was error stating, "In our view, under the circumstances of this case, it would be improper and unfair to permit the sentencing court to consider any of the facts underlying the dismissed count three for purposes of aggravating or enhancing defendant's sentence. Count three was dismissed in consideration of defendant's agreement to plead guilty to counts one and two. Implicit in such a plea bargain, we think, is the understanding (in the absence of any contrary agreement) that *defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count.*" (*Harvey, supra,* at p. 758, italics added.) It was from the parenthetical in the quoted text that the notion of a *Harvey* waiver developed. (*People v. Goulart* (1990) 224 Cal.App.3d 71, 80 [273 Cal.Rptr. 477] (*Goulart*).) "A defendant who signs the typical waiver form agrees to allow the sentencing judge to consider his entire criminal history, including any unfiled or dismissed charges." (*Ibid.*)

Defendant was charged in the second amended complaint with inflicting corporal injury on a cohabitant in connection with the November 2005 incident. However, during the preliminary hearing, it was established that this incident occurred on Interstate 5 somewhere outside of Yolo County. Defendant was not held to answer on that count, and the offense was not charged in the information. Consequently, that incident was not the basis for any of the counts that were dismissed as part of the plea agreement.

Defendant provided a *Harvey* waiver, but the plea form used here did not contain the typical *Harvey* waiver language.[5] Neither the plea form, nor anything said by the parties or the court expressly referenced the November 2005 incident or uncharged offenses. The following is handwritten in the section of defendant's plea form pertaining to the promises that induced his plea: "Cts 1–4 & 6–9 dism. in light of the plea to ct 1 [*sic*].[6] *Harvey* waiver for restitution purposes only." The court understood the agreement to be that "the remaining counts would be dismissed with [a] *Harvey* waiver." The parties did not correct the court's interpretation. We also note that the preplea probation report stated that under the proposed plea agreement, "The remaining counts will be dismissed with a *Harvey* waiver." On this record, it appears that defendant's *Harvey* waiver expressly related to the counts that

---

[5] *Harvey* waiver language typically reads something like the following: "I agree that the sentencing judge may consider my entire criminal history, the entire factual background of this case, including any unfiled, dismissed, stricken charges or allegations, and all the underlying facts of this case when granting probation, ordering restitution, or imposing sentence." (See *People v. Munoz* (2007) 155 Cal.App.4th 160, 167 [65 Cal.Rptr.3d 815]; *People v. Baumann* (1985) 176 Cal.App.3d 67, 74, 75 [222 Cal.Rptr. 32] (*Baumann*).)

[6] During the plea allocution, the trial court clarified that defendant was actually pleading to count five and corrected the form, but missed this particular line on the form.

were dismissed at the time of the plea. Contending that his *Harvey* waiver did not include the uncharged dental crown incident, defendant would have us end our analysis with that. We decline to do so.

█ We conclude that the uncharged November 2005 incident was not part of the plea bargain and thus not subject to the *Harvey* rule. In *People v. Martin* (2010) 51 Cal.4th 75 [119 Cal.Rptr.3d 99, 244 P.3d 496] (*Martin*), our high court reiterated what it had said in *Harvey*. "[A]n implied term of a plea agreement is that a defendant will not be adversely affected 'by reason of the facts underlying, and *solely pertaining to, the dismissed count*.' [Citation.]" (*Id.* at p. 81, italics added.) █ Thus, the foundational basis for the *Harvey* rule is the reasonable expectations of the parties concerning counts dismissed as part of the plea bargain. (*People v. Franco* (1986) 181 Cal.App.3d 342, 349 [226 Cal.Rptr. 280].)

The November 2005 incident was not charged in the information and thus, was not dismissed as part of the plea agreement. And since that incident was not dismissed as part of the negotiated resolution, there is no implied term of the agreement barring that incident's use by the trial court. Nor does the record suggest any other basis upon which to imply that there would be no adverse consequences stemming from the November 2005 incident as a result of the plea agreement.[7] Indeed, when asked whether anyone promised him something that was not in the written plea form, defendant said "No." We conclude defendant had no expectations related to the November 2005 incident whatsoever. In *Martin*, our high court noted that a plea agreement is "in the nature of a contract" (*Martin, supra*, 51 Cal.4th at p. 77) and further

---

[7] Employing contract principles for determining the existence of an implied covenant in the context of criminal case plea bargaining, this court has previously noted, " 'The law refuses to read into contracts anything by way of implication except upon grounds of obvious necessity. "[I]mplied covenants are not favored in the law; and courts will declare the same to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties to the contract made" [citation].' " (*People v. Haney* (1989) 207 Cal.App.3d 1034, 1039 [255 Cal.Rptr. 276]; see *id.* at pp. 1139–1140 [trial court did not err in using prior convictions as basis for imposing the upper term despite those prior convictions having been alleged as enhancements and dismissed as part of the plea bargain].) Establishment of an implied covenant requires several concurrent conditions: " '(1) the implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on grounds of legal necessity; (4) a promise can be implied only where it may be rightfully assumed that it would have been made if attention had been called to it; and (5) there can be no implied covenant where the subject is completely covered by the contract [citation].' " (*Haney, supra*, 207 Cal.App.3d at p. 1039.) None of these conditions exist here. Also, no custom and usage has been identified from which we can imply that the plea agreement here excluded the November 2005 incident from the restitution calculus. (*Haney, supra*, 207 Cal.App.3d at pp. 1039–1040.)

observed, "[s]imply stated, the *Harvey* rationale is that 'a deal is a deal' " (*id.* at p. 80). Here, simply stated, the November 2005 incident was not part of the deal.

██ We realize that cases have suggested unfiled charges can be covered by a *Harvey* waiver. For example, in *Goulart*, restitution was ordered for uncharged time periods during which defendant stole utility services in addition to the time periods for which he pled guilty. (*Goulart, supra*, 224 Cal.App.3d at pp. 78–79.) In *Baumann*, the court ordered restitution for acts of embezzlement that were dismissed as part of the plea bargain as well as acts that were not charged. (*Baumann, supra*, 176 Cal.App.3d at pp. 73–74.) In both *Goulart* and *Baumann*, the defendants gave typical *Harvey* waivers covering uncharged incidents. Consequently, those courts never reached the issue of whether a *Harvey* waiver was actually required for uncharged incidents not contemplated as part of the plea bargain, and defendant has cited no case where the court did. It is not our intent to suggest that trial courts should discontinue obtaining *Harvey* waivers for uncharged offenses. Such waivers will foreclose any argument about whether a plea agreement does or does not contemplate unfiled charges. We hold, however, that where the plea agreement does not expressly or impliedly include uncharged incidents, a *Harvey* waiver is not required. Such is the case here.

██ Having found that *Harvey* was not violated, the question still remains whether the trial court validly could impose restitution for the November 2005 assault as a condition of defendant's probation for the January 2007 false imprisonment.[8] Section 1203.1, subdivision (j)[9] grants broad discretion to the trial courts to prescribe the conditions of probation to foster rehabilitation and to protect public safety. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120 [43 Cal.Rptr.2d 681, 899 P.2d 67].) The court is not limited to the transactions or amounts of which defendant is actually convicted. Indeed, restitution has been found proper where the loss was caused by related conduct not resulting in a conviction. (*Carbajal, supra*, 10 Cal.4th at p. 1121 [restitution as condition of probation for conviction of hit and run stemming from damages caused in the collision from which defendant fled].) Restitution has also been found proper for conduct of which a defendant has been acquitted (*People v. Lent* (1975) 15 Cal.3d 481, 483 [124 Cal.Rptr. 905,

---

[8] Defendant does not contend that the superior court sitting in Yolo County could not impose restitution related to an incident that occurred in another county. Nevertheless, we note that the superior court in Yolo County was not without fundamental jurisdiction. (See *People v. Posey* (2004) 32 Cal.4th 193, 208 [8 Cal.Rptr.3d 551, 82 P.3d 755].)

[9] Section 1203.1, subdivision (j) provides in pertinent part: "The court may impose and require . . . reasonable conditions . . . as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . ."

541 P.2d 545]), uncharged conduct, and conduct for which the statute of limitations has run (*Goulart, supra,* 224 Cal.App.3d at pp. 79, 81). "[I]t is well settled that a court may impose a victim restitution order as a condition of probation regardless of whether or not the defendant has been convicted of the underlying crime." (*People v. Percelle* (2005) 126 Cal.App.4th 164, 179 [23 Cal.Rptr.3d 731].)

■ The test for determining the validity of a restitution order as a condition of probation is the same as for any other condition of probation that requires or forbids conduct that is not itself criminal. The condition must reasonably be related either to the crime of which defendant is convicted *or* to the goal of deterring future criminality. (*Carbajal, supra,* 10 Cal.4th at pp. 1121, 1123; *Baumann, supra,* 176 Cal.App.3d at pp. 76–77.) We review the imposition of any condition of probation for abuse of discretion and reverse only when the trial court's determination is arbitrary or capricious or " ' " 'exceeds the bounds of reason, all of the circumstances being considered.' " ' " (*Carbajal, supra,* 10 Cal.4th at p. 1121.)

■ The order that defendant pay $420 in restitution to the victim for replacing her crown easily meets either prong of the test. Defendant's past conduct toward the victim is not just reasonably related to the crime for which he was convicted, it is directly related. False imprisonment can be accomplished by menace and the restraint must be against the victim's will.[10] In domestic violence situations, prior abuse impacts the victim's state of mind and can result in ongoing fear and intimidation. (See *People v. Gaut* (2002) 95 Cal.App.4th 1425, 1430–1432 [115 Cal.Rptr.2d 924] [past physical abuse of domestic violence victim is probative on whether the victim was reasonably in fear, an element of terrorists threats]; *People v. McCray* (1997) 58 Cal.App.4th 159, 172, 173–174 [67 Cal.Rptr.2d 872] [same].) Here, defendant's prior assaults on the victim, including the November 2005 incident, instilled fear and facilitated ongoing intimidation. Thus, defendant's past prior violence against the victim was a circumstance that is directly related to his false imprisonment of the victim as it contributed to the element of menace and vitiated the victim's consent. Moreover, requiring restitution for the dental crown serves the goal of deterring future assaultive conduct by defendant against the victim or anyone else with whom he establishes an intimate relationship.

Accordingly, we find no abuse of discretion.

---

[10] Menace means a verbal or physical threat of harm. The threat of harm may be express or implied. (*People v. Wardell* (2008) 162 Cal.App.4th 1484, 1490, 1491 [77 Cal.Rptr.3d 77]; CALCRIM No. 1240.)

An act is done against the victim's will if that person does not consent to the act. In order to consent, a person must act freely and voluntarily. (CALCRIM No. 1240.)

## DISPOSITION

The judgment is affirmed.

Nicholson, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 8, 2012, S202482.